IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DORIS SMITH,

    Plaintiff,

v.                                       No. 1:20-cv-02204-STA-jay

ZOLL MEDICAL CORPORATION,
ZOLL MANUFACTURING
CORPORATION, ZOLL LIFECOR
CORPORATION, ZOLL LIFEVEST
HOLDINGS, LLC, AND
ZOLL SERVICES, LLC.,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Doris Smith, as the surviving spouse of Alex Smith ("the Decedent"), and individually, filed this wrongful death/product liability action against ZOLL Medical Corporation, ZOLL Manufacturing Corporation, ZOLL Lifecor Corporation, ZOLL LifeVest Holdings, LLC, and ZOLL Services, LLC (collectively "ZOLL"), alleging various state law claims of strict liability and negligence for the injuries and subsequent death of the Decedent. Jurisdiction is predicated on diversity of citizenship, 28 U.S.C. § 1332. Defendants have filed a motion for summary judgment. (ECF No. 57.) Plaintiff has not responded to the motion and the requisite time to do so has passed. For the reasons set forth below, the motion for summary judgment is **GRANTED.**

Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court must review all the evidence and

draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Procedural Background

Plaintiff, through counsel, filed her initial complaint on March 19, 2020. (ECF No. 1.) She then filed an amended complaint on June 30, 2020 (ECF No. 24), and a second amended complaint on July 29, 2020. (ECF No. 31.) On December 8, 2020, the Court partially granted and partially denied ZOLL's motion to dismiss. (ECF No. 35.) Plaintiff was allowed to proceed on her state law strict liability and negligence claims concerning the manufacture/refurbishment of the LifeVest, including her claims for consortium and punitive damages. (*Id.* at p. 19.) On June 14, 2021, the

Court granted Plaintiff's counsel's unopposed motion to withdraw as Plaintiff's attorney. (ECF No. 48.) Since that date, Plaintiff has proceeded pro se.

Because Plaintiff did not serve responses to ZOLL's discovery requests and Plaintiff did not respond to ZOLL's motion to compel, on September 3, 2021, the Court granted ZOLL's motion to compel, ordering Plaintiff to provide full responses to ZOLL's discovery requests by September 24, 2020. (ECF No. 56.) Plaintiff, again, did not comply with or respond in any way to the Court's order. (Brinson Decl. ¶ 5, ECF No. 44-1.) On September 30, 2021, Plaintiff failed to serve her Rule 26(a)(2) expert information as mandated by the scheduling order of March 4, 2021. (*Id.*) Other than a telephone call to request a fourth copy of the outstanding discovery requests, Plaintiff has not communicated with ZOLL's counsel about discovery, her expert disclosures, or any other matter. (Brinson Decl. ¶ 5.)

ZOLL now seeks summary judgment on the ground that Plaintiff has not offered any expert testimony and, therefore, cannot meet her burden on multiple elements of her claims under Tennessee law. In the alternative, ZOLL seeks dismissal of this action as a sanction for failure to comply with the orders of the Court and for failure to prosecute. Because the Court finds that ZOLL is entitled to summary judgment on the merits, the Court will not address whether dismissal is appropriate as a sanction. However, the Court notes that, after Plaintiff's attorney's withdrawal, Plaintiff has shown a remarkable lack of interest in prosecuting her case. For the most part, Plaintiff has ignored all deadlines without explanation.

Allegations and Analysis

The Decedent was allegedly prescribed a ZOLL LifeVest wearable cardioverter defibrillator by his physician due to an underlying heart condition that could "cause arrhythmia and result in sudden cardiac arrest or death." (Sec. Am. Compl. ¶ 47, ECF No. 31.) The LifeVest provides protection by continuously monitoring the patient's heart rhythm and delivering treatment shocks to

the patient when an arrhythmia is detected. (*Id.* ¶ 30.)  Plaintiff claims that the LifeVest "failed to operate as designed" by not sounding an alarm or administering a shock treatment. (*Id.* ¶¶ 52–53.) The Decedent died on April 1, 2019. (*Id.* ¶ 55.)  Plaintiff alleges that, following an investigation, it was determined that the LifeVest's battery was not properly connected at the time of the Decedent's arrhythmia and the inadequate connection contributed to the LifeVest's failure to sound an alarm and deliver an electrical shock treatment. (*Id.* ¶ 57.)  Plaintiff claims that the LifeVest's failure to detect and treat the Decedent's arrhythmia is "the result of defects in the Subject LifeVest's manufacture, refurbishment, repair, production, assembly, and distribution in violation of the FDA's approved design specifications and requirements for the LifeVest." (*Id.* ¶ 59.)

The LifeVest's "defective, unsafe, and unreasonably dangerous condition actually and proximately caused injury, damage, and death" to the Decedent, according to Plaintiff.  (*Id.* ¶¶ 65.) Defendants' failure to properly manufacture, produce, refurbish, and test the LifeVest as required by the device's FDA-approved design and manufacturing requirements is allegedly what caused the LifeVest's battery to be disconnected when it reached the Decedent. (*Id.* ¶¶ 69, 70.)

Plaintiff sues ZOLL for strict liability and negligence due to the alleged defective manufacture, production, refurbishment, and distribution of the LifeVest in violation of the FDA-approved design and manufacturing requirements for the device.  Plaintiff's claims are brought under the Tennessee Protection Liability Act ("TPLA"), which governs all product liability actions brought under Tennessee law. *See* Tenn. Code Ann. § 29-28-102(6).[1]  A product is "defective" under the

---

[1]
> "Product liability action" for purposes of this chapter includes all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or

4

TPLA if the condition "renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code. Ann. § 29-28-102(2).  It is unreasonably dangerous if it is dangerous beyond that which "would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that he knew of its dangerous condition." Tenn. Code Ann. § 29-28-102(8).  It is not enough for the plaintiff to allege that he was injured by a product; he "must show that there was something wrong with the product, and trace [his] injury to the specific defect." *Maness v. Bos. Sci.*, 751 F. Supp. 2d 962, 968 (E.D. Tenn. 2010) (quoting *King v. Danek Med., Inc.*, 37 S.W.3d 429, 452–53 (Tenn. Ct. App. 2000)).  Thus, the TPLA requires allegations demonstrating "(1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the plaintiff's injury was proximately caused by the defective product." *Mitchell v. Boehringer Ingelheim Pharm., Inc.*, 2017 WL 5617473 at *3 (quoting *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008)).

To prove her case, Plaintiff must establish that the product was "unreasonably dangerous at the time it left the control of the manufacturer ..., regardless of the legal theory relied upon." *Shoemake v. Omniquip Int'l, Inc.*, 152 S.W.3d 567, 572 (Tenn. Ct. App. 2003 (quoting *Fulton v. Pfizer Hosp. Prod. Grp., Inc.*, 872 S.W.2d 908, 911 (Tenn. Ct. App. 1993)). As explained by ZOLL, there are two tests for determining whether a product is "unreasonably dangerous." A product is unreasonably dangerous if it is more dangerous than would be contemplated by an ordinary consumer (the "consumer expectation test"), or if the product is so dangerous it would not be put on the market by a reasonably prudent manufacturer (the "prudent manufacturer test"). Tenn. Code Ann.

---

innocent; or under any other substantive legal theory in tort or contract whatsoever… Tenn. Code Ann. § 29-28-102(6)

§ 29-28-102(8); *see also Coffey v. Dowley Mfg. Inc.*, 187 F. Supp. 2d 958, 968 (M.D. Tenn. 2002), *aff'd* 89 F. App'x 927 (6th Cir. 2003) (describing the two tests).

The undisputed facts show that the product in this case is a complex medical device not familiar to ordinary consumers or lay witnesses, and, therefore, the prudent manufacturer test must be used to analyze Plaintiff's claims. Accordingly, Plaintiff must offer competent and admissible expert testimony establishing that the LifeVest® was unreasonably dangerous at the time it left ZOLL's hands due to an identifiable manufacturing defect caused by a violation of an identifiable federal regulation in keeping with *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008). *See Coffey*, 187 F. Supp. 2d at 972 (granting summary judgment and dismissing plaintiffs' case because "without expert testimony, '... no reasonable jury could find for [plaintiffs] because, under Tennessee law, expert testimony is required to establish liability in cases alleging manufacturing and design defects.'" (quotation omitted)); *see also Pride v. BIC Corp.*, 218 F.3d 566, 580 (6th Cir. 2000) (noting that Tennessee law requires expert testimony in cases alleging manufacturing and design defects); *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 301 (Tenn. App. 1995) (discussing the requirement of expert testimony when workings of a product are beyond the common knowledge of laymen); *Jastrebski v. Smith & Nephew Richards, Inc.*, 1999 WL 144935, at *6 (Tenn. Ct. App. Mar. 18, 1999) (affirming summary judgment and dismissal because "[t]he product in dispute is a technically complex prescription medical device, and expert testimony is required to establish the causal connection between the alleged defect in the device and Plaintiff's claimed injuries.").

Plaintiff's deadline to disclose Rule 26(a)(2) expert information was September 30, 2021.[2]

---

[2] Rule 26 requires parties to disclose "the identity of any witness it may use at trial to present evidence," accompanied by a written report "if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2). If the witness is not required to provide a written report, the disclosure must state "a summary of the facts and opinions to which the witness is expected to testify." *Id.* "If a party fails to provide information or identify a witness as required by Rule 26(a) …, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

However, she has failed to comply with that deadline or to seek an extension of time in which to do so. Because Plaintiff has failed to provide expert testimony under Rule 26, Plaintiff is unable to support her claim for manufacturing defect(s), and ZOLL is entitled to summary judgment as a matter of law. The motion for summary judgment is **GRANTED**, and judgment will be entered in favor of Defendants ZOLL.

    **IT IS SO ORDERED.**

                                            **s/ S. Thomas Anderson**
                                            S. THOMAS ANDERSON
                                            CHIEF UNITED STATES DISTRICT JUDGE

                                            Date:  December 3, 2021.

---

harmless." Fed. R. Civ. P. 37(c)(1).